NOT FOR PUBLICATION                                                    CLOSED

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JUAN S. VAZQUEZ**, | |
| Plaintiff, | Civil Action No.: 09-2810 (JLL) |
| **v.** | |
| **COMMISSIONER OF SOCIAL SECURITY**, | **OPINION** |
| Defendant. | |

Presently before this Court is Plaintiff Juan S. Vazquez's Appeal seeking a review of a final determination by the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits, pursuant to §223 of the Social Security Act, 42 U.S.C. § 423 (and/or Section 1383). The issue presented is whether the Commissioner's decision to deny Plaintiff's application for disability insurance benefits is supported by substantial evidence. Jurisdiction to review this matter exists pursuant to 42 U.S.C. § 405(g). This Court has considered the submissions in support of and opposition to the instant appeal and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that the Commissioner's determination is supported by substantial evidence and is hereby affirmed.

### I.    FACTS AND PROCEDURAL HISTORY

Plaintiff filed a Tile II application on October 21, 2005 for disability and disability insurance benefits and also filed a Title XVI application at the same time for supplemental security income. (R. at 19). Plaintiff alleged disability beginning September 4, 2005; both claims were denied on

1

April 12, 2006.  (Id.).  However, plaintiff was found to be disabled as of June 21, 2006.  (Id.).

Plaintiff's request for reconsideration was also denied; however, the onset date of June 21, 2006

was affirmed.  (Id.).  On May 27, 2008, the plaintiff requested a hearing seeking an earlier onset

date of September 4, 2005.  (Id. at 70).  Plaintiff's request was granted and a hearing was held on

October 20, 2008, before ALJ Dennis O'Leary ("ALJ"), who allowed the previous

reconsideration determination to stand.  (Id. at 13).

      At the time of the hearing, plaintiff was over 60 years of age.  (Id. at 47-8).  The record

indicates that plaintiff worked as a machine operator until September 2005, at which time,

according to his testimony, he was no longer to perform his job.  (Id. at 49).  At the hearing, the

plaintiff claimed experiencing very bad back pain and was unable to lift the twenty pounds

required for his job.  (Id. at 50).  Plaintiff also testified that during the relevant period at issue,

namely, September 4, 2005 to June 21, 2006, he was living alone, collected unemployment for

six months, and spent time fishing with his family.  (Id. at 51).

      The medical record reveals that plaintiff has been treated for HIV infection since at least

2003.  On June 28, 2004, plaintiff's CD4 cell count was 184 and viral load was 593.  (Id. at 198).

Clinical notes from Dr. Lucyamma Thalody, dated July 8, 2005, stated that plaintiff had not been

treated for his HIV infection because his CD4 count was not too low.  (Id. at 160-61).  On

September 29, 2005, plaintiff's CD4 count was 193 and viral load was less than 400.  (Id. at

187).  On March 15, 2006, plaintiff underwent a consultative examination by Dr. R.C. Patel, who

reported that plaintiff's physical examination was essentially benign.  (Id. at 125-27).  Dr. Patel

further reported that plaintiff was oriented to time and place, and his intelligence and memory

was average.  (Id).  On April 5, 2006, plaintiff underwent a consultative psychological evaluation

with Dr. Ernesto Perdomo, Ph.D.  (Id. at 130).  Dr. Perdomo reported that plaintiff traveled to the

2

appointment by himself by public transportation, that his thought process was well organized and focused, that his concentration was fairly to mildly impaired, that he spoke coherently and relevantly, and that his short-term memory was impaired, but his long-term memory was good. (Id. at 131-32).  On June 12, 2006, Dr. Mansour reported that plaintiff had multiple disc bulges in his lumbosacral region.  (Id. at 159).  Lastly, on June 19, 2006, plaintiff underwent a clinical assessment at Trinitas Hospital, in which it was noted that plaintiff was very depressed and was diagnosed with major depression with psychosis.  (Id. at 135).

## II.   LEGAL STANDARD

### A.  Disability Defined

Under the Social Security Act, a claimant must demonstrate that he is disabled based on an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §1382(c)(a)(3)(A).  A plaintiff will not be considered disabled unless he cannot perform his previous work and is unable, in light of his age, education, and work experience, to engage in any other form of substantial gainful activity existing in the national economy.  Id. at § 423(d)(2)(A).  see also Sykes v. Apfel, 228 F.3d. 259, 262 (3d Cir. 2000); Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  The Act requires an individualized determination of each plaintiff's disability based on evidence adduced at a hearing.  See Sykes, 228 F.3d at 263 (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)); 42 U.S.C. § 405(b).

The Social Security Administration has developed a five-step process set forth in the Code of Federal Regulations for evaluating the legitimacy of a plaintiff's disability.  20 C.F.R. §

3

404.1520.  In **step one**, the plaintiff must establish that he is not currently engaging in substantial gainful activity.  Id. at § 404.1520(a).  If the plaintiff is engaged in substantial gainful activity, the claim for disability benefits will be denied.  See Plummer, 186 F.3d at 428 (citing Bowen v. Yuckert, 482 U.S. 137, 140 (1987)).  In **step two**, if the plaintiff is not working, he must establish that he suffers from a severe impairment.  20 C.F.R. § 404.1520(c).  If the plaintiff fails to demonstrate a severe impairment, the Administrative Law Judge ("ALJ") must deny disability benefits.  Id.

If the plaintiff suffers a severe impairment, **step three** requires the ALJ to determine, based on the medical evidence, whether the impairment matches or is equivalent to a listed impairment found in "Listing of Impairments" located in 20 C.F.R. § 404, Subpart P, Appendix 1.  Id.; Burnett, 220 F.3d at 118-20.  If it does, the plaintiff is automatically disabled.  20 C.F.R. § 404.1520(e).  However, the plaintiff will not be found disabled simply because he is unable to perform his previous work.  Id.  The Third Circuit has required that in determining whether the plaintiff's impairments meet or equal any of the listed impairments, an ALJ must identify relevant listed impairments, discuss the evidence, and explain his reasoning.  See Burnett, 220 F.3d at 119-20.  A conclusory statement of this step of the analysis is inadequate and is "beyond meaningful judicial review."  Id.

If the plaintiff does not suffer from a listed severe impairment or an equivalent, the ALJ proceeds to steps four and five.  See Plummer, 186 F.3d at 428.  In **step four**, the ALJ must consider whether the plaintiff "retains the residual functional capacity to perform [his or] her past relevant work."  Id.; see also Sykes, 228 F.3d at 263; 20 C.F.R. § 404.1520(d).  This step requires the ALJ to do three things: (1) assert specific findings of fact with regard to the plaintiff's residual functional capacity ("RFC"); (2) make findings with regard to the physical

4

and mental demands of the plaintiff's past relevant work; and (3) compare the RFC to the past relevant work, and based on that comparison, determine whether the claimant is capable of performing the past relevant work.[1]   See Burnett, 220 F.3d at 120.  The plaintiff bears the burden of proof for steps one, two and four of this five-step test.[2]   See Sykes, 228 F.3d at 263.

If the plaintiff cannot perform the past work, the analysis proceeds to step five.  In this **final step**, the burden of production shifts to the Commissioner to determine whether there is any other work in the national economy that the plaintiff can perform.  See 20 C.F.R. §404.1520(f); Sykes, 228 F.3d at 263 (citing Yuckert, 482 U.S. at 146 n.5); Burnett, 220 F.3d at 118-19; Plummer, 186 F.3d at 429.  In demonstrating there is existing employment in the national economy that the plaintiff can perform, the Commissioner can utilize the medical-vocational guidelines (the "grids") from Appendix 2 of the regulations, which consider age, physical ability, education and work experience.  20 C.F.R. § 404, Subpt. P, App. 2.  However, when determining the availability of jobs for plaintiffs with exertional and non-exertional impairments,[3] "the

---

[1] In Thomas v. Comm'r of Soc. Sec. Admin., 294 F.3d 568 (3d Cir. 2002), this Circuit recently observed that

Step Four was designed to facilitate the determination of whether a claimant has the capacity to work, because it is easier to evaluate a claimant's capacity to return to a former job than to decide whether any jobs exist for a person with the claimant's impairments and vocational background. Nevertheless, we cannot lose sight of the fact that the touchstone of "disability" is the inability to engage in any substantial gainful activity that exists in the national economy.

Id. at 574; See also 42 U.S.C. § 423(d)(2).

[2] Neither side bears the burden of proof in step three because "step three involves a conclusive presumption based on the listings."  Sykes, 228 F.3d at 263 n.2 (citing Yuckert, 482 U.S. at 146-47 n.5)).

[3] Under the Code of Federal Regulations, impairments can be either exertional or non-exertional. Exertional impairments affect the plaintiff's "ability to meet the strength demands of jobs" in terms of "sitting, standing, walking, lifting, carrying, pushing, and pulling." 20 C.F.R. §

government cannot satisfy its burden under the Act by reference to the grids alone," because the

grids only identify "unskilled jobs in the national economy for claimants with exertional

impairments who fit the criteria of the rule at the various functional levels." Sykes, 228 F.3d at

269-70.  Instead, the Commissioner must utilize testimony of a "vocational expert or other

similar evidence, such as a learned treatise," to establish whether the plaintiff's non-exertional

limitations diminish his residual functional capacity and ability to perform any job in the nation.

Id. at 270-71, 273-74; see also Burnett, 220 F.3d at 126 ("A step five analysis can be quite fact

specific, involving more than simply applying the Grids, including . . . testimony of a vocational

expert").  If this evidence establishes that there is work that the plaintiff can perform, then he is

not disabled.

### B.  Standard of Review

"Substantial evidence" is the standard of proof in disability insurance benefit cases.

Substantial evidence is more than a "'mere scintilla' of evidence and 'means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v.

Perales, 402 U.S. 389, 401 (1971).  Substantial evidence may be slightly less than a

preponderance.  See Hanusiewicz v. Bowen, 678 F. Supp. 474, 476 (D.N.J. 1988). When an

"[ALJ] is faced with conflicting evidence he must adequately explain in the record his reasons

for rejecting or discrediting competent evidence."  Ogden v. Bowen, 677 F. Supp 273, 278 (M.D.

Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  An opinion regarding

medical equivalence must be based on medical findings supported by medically acceptable

clinical and diagnostic laboratory techniques.  See 20 C.F.R. §§404.1526(b), 404.1527.

---

404.1569(a).  All other impairments are considered non-exertional.  Id.; see also Sykes, 228 F.3d
at 263.

6

The court has a duty to review the evidence in its totality and decide whether the Commissioner's determination was reasonable.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  The Commissioner has a duty to facilitate this review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden, 677 F. Supp. at 278.  The court gives deference to the administrative decision, but has a duty nonetheless to scrutinize the entire record to determine whether the ALJ's findings are rational and supported by substantial evidence.  See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  The court, however, is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

Under 42 USC § 423(d)(5)(A) and 20 CFR § 404.1529(b), a claimant's subjective symptoms alone cannot form the basis of a finding of disability.  The Commissioner will consider objective evidence from the application of medically acceptable clinical and laboratory diagnostic techniques.  See 20 CFR § 404.1529 (c)(2).  A claimant's subjective allegations of pain and other symptoms must be supported by objective medical evidence. See Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).  Moreover, the Commissioner will give significant weight to a claimant's subjective complaints and alleged functional limitations only when those limitations are supported by competent medical evidence. See Schaudek v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).  The Commissioner may reject testimony of subjective complaints where it is not consistent with the medical evidence.  See Burns v. Barnhart, 312 F.3d 113, 130-31 (3d Cir. 2002).

## III.    DISCUSSION

Plaintiff makes two contentions regarding the ALJ's findings at step two and three of the five-step evaluation process under the Social Security Act.  First, plaintiff argues that the ALJ's residual capacity assessment, which concluded that plaintiff could perform a full range of work at all exertional levels and only simple and repetitive tasks at non-exertional levels, runs counter-intuitive to the ALJ's step two finding that plaintiff had severe impairments.  (Br. in Supp. of Pl. Juan Vazquez, at 17-18 [hereinafter "Pltf.'s Br."]).  Plaintiff asserts that this finding is illogical because it is impossible for the plaintiff, who is over 60 years of age, to work all day, lifting objects and standing, while he has HIV and chronic back pain.  (Id.).

In reviewing the record before this Court, it is clear that the ALJ determined that SSR 98-6p allows only the consideration of functional limitations and restrictions that result from plaintiff's medically determinable impairment(s); age cannot be a factor in assessing RFC.  (R. at 19). Further, the ALJ followed a two-step process in which he first determined whether there was any underlying medically determinable physical or mental impairment(s) that can be shown through medically acceptable clinical and laboratory diagnostic techniques.  (Id. at 22).  Having done that, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (Id. at 24).  The ALJ also evaluated the intensity, persistence, and limiting effects of the plaintiff's symptoms to determine the extent to which they limited the plaintiff's ability to perform basic work activities.  (Id.).

The ALJ also reviewed the medical record which revealed that the plaintiff has been treated for HIV infection at least since 2003.  (Id.).  The medical record showed that plaintiff's CD4 cell count was 184 as of June 28, 2004.  (Id. at 198).  Clinical notes dated July 8, 2005 from Dr. Lucyamma Thalody, stated that plaintiff has had HIV since 1997, but had not been treated for it because his CD4 count was not too low.  (Id. at 160-61).  On September 29, 2005, during the

8

relevant period at issue, plaintiff's CD4 count was 193, which clearly showed improvement in the progression of his HIV infection.  (Id. at 187).  The ALJ noted that the plaintiff had HIV for years prior to being laid off and was able to work during those years notwithstanding his HIV status.  The ALJ's opinion is also consistent with the findings of the consultative examiner, Dr. R.C. Patel.  On March 15, 2006, Dr. Patel performed a physical examination on the plaintiff, which was essentially benign; as to mental status, the plaintiff was oriented to time and place and his intelligence and memory was average.  (Id. at 125-127).  At that time, the plaintiff did not report any neuromusculoskeletal complaints.  (Id.).

With respect to the plaintiff's ability to perform simple and repetitive tasks, the plaintiff argues that the ALJ's finding is inconsistent because even the ALJ found plaintiff to have "moderate difficulties" to sustain "concentration, persistence, and pace." (Pl.'s Br., at 19). However, the Commissioner asserts, and this Court agrees, that there is no evidence to support the contention that this finding is inconsistent because having moderate difficulties to sustain concentration, persistence and pace, may be the very reason that limits the plaintiff to simple and repetitive tasks.  Further, a plaintiff's subjective symptoms alone cannot form the basis for a finding of disability, and therefore, must be supported by substantial evidence.  See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(b); see also Hartranft, 181 F.3d 362.  During the relevant period at issue here, the plaintiff testified that he lived alone, collected unemployment for six months and would spend time fishing with his family. (Pl.'s Br., at 19).  Significantly, the plaintiff underwent a consultative psychological evaluation with Dr. Ernesto Perdomo, Ph.D. on April 5, 2006.  (Id at 130).  The plaintiff traveled to the appointment alone by public transportation.  (Id. at 131).  His thought process was well organized and focused.  (Id. at 132). He spoke coherently and relevantly, his concentration was fair to mildly impaired, his

association and abstraction abilities were poor, and although his short-term memory was impaired, his long-term memory was good.  (Id.).  Further, he was still able to follow three-step commands.  (Id.).  Therefore, this Court finds that although the ALJ determined that plaintiff had severe impairments, the medical record does not demonstrate that the impairments limited the plaintiff's ability to perform basic work activities.

Plaintiff also alleges that the ALJ was obligated to, but did not, combine all of plaintiff's severe symptoms and compare their joint effect against one of the Commissioner's Listings to determine medical equivalence in step three.  (Pl.'s Br., at 22-23).  Plaintiff asserts that the ALJ only explored Paragraph 12.04 in terms of plaintiff's psychiatric disability, but did not consider plaintiff's HIV under Paragraph 14.08 or the plaintiff's back disorder under Paragraph 1.04. (Id.).  Although the ALJ clearly considered Paragraph 12.04, it is also clear that he considered Dr. Mansour's report from June 12, 2006, regarding plaintiff's MRI, which showed that the lumbosacral region showed multiple disc bulges and tenderness in the lower back, pursuant to Listing 1.04 and plaintiff's CD4 cell counts and viral load, pursuant to Listing 14.08.  (Id. at 25). In spite of these considerations, plaintiff's symptoms do not meet the requirements of Listing 1.04 and 14.08, respectively.  The Third Circuit has established that the ALJ does not need to use particular language in conducting his analysis.  Jones v. Comm'r, 364 F.3d 501, 505 (3d Cir. 2004).  The ALJ considered the requirements of all the relevant listings in combination, and properly determined that plaintiff's impairments were not severe enough to meet or medically equal an impairment in the Commissioner's Listings.  This Court agrees with the conclusion of the ALJ because it is supported by the medical record and testimony.  Therefore, it is based on substantial evidence and is hereby affirmed.

**IV.    CONCLUSION**

10

This Court has carefully reviewed the ALJ's opinion and the record in this appeal.  The Court finds that the Commissioner's decision that Plaintiff was not disabled within the meaning of the Social Security Act was supported by substantial evidence.  Therefore, the decision of the Commissioner is hereby affirmed.  An appropriate Order accompanies this Opinion.


DATED:  March 24, 2010                              /s/ Jose L. Linares                                
                                                                JOSE J. LINARES,
                                                                UNITED STATES DISTRICT JUDGE